40 So.3d 1 (2010)
Dell LIEBREICH, as Personal Representative of the Estate of Lisa McPherson, Deceased, Appellant,
v.
TRIAL STRATEGIES, INC., Appellee.
No. 2D08-2866.
District Court of Appeal of Florida, Second District.
May 14, 2010.
Rehearing Denied August 11, 2010.
Thomas J. Dandar of Dandar & Dandar, P.A., Tampa, and Luke Lirot of Luke Charles Lirot, P.A., Clearwater, for Appellant.
Joseph W. Fleece, III, and Hamden H. Baskin, III, of Baskin Fleece, Clearwater, for Appellee.
ALTENBERND, Judge.
Dell Liebreich, as Personal Representative of the Estate of Lisa McPherson, appeals a final judgment awarding Trial Strategies, Inc., $72,926.06 as costs for services rendered in the Estate's well-publicized wrongful death lawsuit against the Church of Scientology Flag Service Organization, Inc. We affirm this judgment because no preserved or fundamental error has been presented to this court that would allow us to do otherwise. Our affirmance, however, should not prevent the Estate from seeking other remedies, including reimbursement of this amount from Dandar & Dandar, P.A., under the contingency fee agreement between them.

I. The Facts
In January 1997, Fannie McPherson and Dell Liebreich retained the law firm of *2 Dandar & Dandar to bring a lawsuit on behalf of the Estate against the Church of Scientology. The law firm has only two members, Kennan and Thomas Dandar, who are brothers. The Estate was told that Kennan Dandar would be the lawyer primarily responsible for this case. Fannie McPherson and Dell Liebreich signed a contingency fee agreement with Dandar & Dandar, apparently binding the Estate. The agreement called for the law firm to receive a standard percentage of any recovery as its attorneys' fees. As to costs, the agreement states:
In further consideration of our attorneys' promise to represent us and to expend their time in representing us, we agree to pay ANY AND ALL COSTS of investigation, expert's fees, medical case management and other expenses incurred by the office of DANDAR & DANDAR, A PROFESSIONAL ASSOCIATION, their staff, court costs, photographs, and mailing expenses, in order to properly represent us in the pursuit of our claim. We further understand that we are obligated to pay these costs whether or not our claim is successful. This Agreement on the undersigneds' part is pursuant to the rules of ethics established by the Florida Bar and the Florida Supreme Court.
The lawsuit was filed in February and soon mushroomed into an extensive piece of litigation. The law firm did not add any additional lawyers or paralegals to the firm to work on this case. In June 1998, however, the law firm retained the services of Dr. Michael Garko, who has a Ph.D. in communications. He held himself out as an expert trial and jury consultant, although his background, training, and expertise in this area seem rather limited.
The law firm had Dr. Garko sign a confidentiality agreement under which he agreed to conduct no press conferences or write any books about the lawsuit without the express written authorization of Kennan G. Dandar, attorney for the Estate of Lisa McPherson. Neither the Estate nor the law firm entered into any written contract with Dr. Garko pertaining to his services. The initial oral understanding between Dr. Garko and Kennan Dandar was that Dr. Garko would work on the case about twenty hours a week for a monthly retainer of $5000. Dr. Garko claimed that, over and above the retainer, Kennan Dandar agreed to pay him $250 per hour. By August 1999, the two men had concluded that Dr. Garko's services were required full time. From that point on, Dr. Garko charged a monthly retainer of $8000 and believed he was entitled to an additional $200 for each hour he worked on the case. This understanding was not reduced to a written contract, but Dr. Garko provided a written memorandum to Kennan Dandar stating the terms of their oral agreement. At some point, Dr. Garko created Trial Strategies, Inc. (TSI), as a corporation through which he provided these services.
The record on appeal establishes that Dr. Garko spent a great deal of time working or thinking about this lawsuit. He attended depositions and hearings. He prepared extensive lists of questions to be asked at depositions. He read transcripts and tried to assess the strengths and weaknesses of various witnesses. He worked to organize the expert witnesses who might be used at trial. At least from the view of this appellate court, there is no question that Dr. Garko worked extensively on this case, but his work looks like the product of a paralegal or young associate attorney. There is little or no documentation in this file that Dr. Garko performed the more narrow and specialized work of a jury consultant. He appears to have been a "trial consultant" who was performing many tasks that are normally performed *3 by attorneys and paralegals who are working to earn a contingency fee.
Over the course of their collaboration, the law firm did not always pay Dr. Garko or TSI the monthly retainer, and there appears to be no evidence that it ever paid an additional hourly rate. It is, however, undisputed that the law firm paid Dr. Garko or TSI $160,000. After August 2001, Dr. Garko testified that Kennan Dandar did not pay him or TSI and told him that there was no available money to pay for his services.
The relationship between Dr. Garko and the law firm collapsed in the spring of 2002. At that time, Dr. Garko discovered that a third party was providing extensive money to the law firm to underwrite this legal action. Dr. Garko testified that he was very upset about being lied to about the law firm's ability to pay him. Kennan Dandar and Dr. Garko appear to disagree about whether Dr. Garko resigned or was fired, but Dr. Garko retained an attorney and sent a letter stating that he had terminated his services. It enclosed an invoice from TSI to Dandar & Dandar for $38,266.66 for unpaid retainers for the period between September 2001 and June 2002. Dandar & Dandar did not respond to this invoice.
In May 2004, the legal action between the Estate and the Church of Scientology settled. Three months later, TSI brought an adversary proceeding in the probate court seeking $1,280,000 in unpaid fees. In describing the services rendered by Dr. Garko, the petition to award costs alleges:
Dr. Garko provided a wide range of trial and jury consulting services to the Estate. Beginning in June of 1998 through June of 2002, Dr. Garko (1) prepared to conduct pretrial jury research (e.g., focus groups, mock trials, public opinion surveys), (2) attended and assisted Dandar at virtually all depositions in and outside of Florida (including depositions held in Los Angeles, Portland, Mexico City, Minneapolis & Washington, D.C.), (3) attended and assisted Dandar at virtually all hearings in the Death Lawsuit, (4) attended and assisted in the mediation of the case and (5) encouraged, originated and conducted talks with attorneys for the Church of Scientology Flag Service Organization in an effort to reach a settlement in the case. Additionally, Dr. Garko (1) organized and conducted strategy meetings for the trial team working on the Death Lawsuit, (2) organized and conducted a meeting in Detroit, Michigan, of all the forensic experts involved in the Death Lawsuit, (3) assisted Dandar in selecting and evaluating expert witnesses, (4) prepared lay and expert witnesses to testify in hearings and depositions, (5) assisted Dandar in strategy meetings within Florida and outside of Florida (e.g., Indiana & Michigan) involving forensic experts hired by the Estate, (6) edited on a frequent basis various documents submitted to the court (e.g., motions, affidavits, memoranda of law & the complaint), (7) developed and recommended on an ongoing basis strategies and tactics to be used in hearings, depositions and in the event the case went to trial, (8) provided observations and recommendations with respect to the strengths and weaknesses of the plaintiff and defendant's respective cases relative to the facts, evidence and witnesses, (9) created themes to be woven into the plaintiff's theory and narrative of the case and (10) provided observations and recommendations about each side's theory and narrative of the case. In short, Dr. Garko worked hand-and-glove with Dandar for four years in preparing the Estate to either litigate or settle the Death Lawsuit by providing a *4 constellation of trial and jury consulting services through the various stages of the litigation process.
The Estate responded to the adversary proceedings in pleadings filed by Kennan Dandar. Luke Lirot also filed a notice of appearance for the Estate. When the adversary proceeding was finally ready to be tried in January 2006, Kennan Dandar appeared for trial with Mr. Lirot. Kennan Dandar insisted that he must "wear two hats," as both the trial lawyer and the main witness for the Estate, but the trial court ordered him to leave the courtroom as a witness under sequestration.
Following the submission of written closing arguments, the trial court entered a final judgment. The trial court found that "there is no dispute that the parties through their agents entered into an oral agreement for [Dr. Garko] to provide jury consulting and other services." The trial court rejected the Estate's argument that the oral agreement was barred by any statute of frauds, rejected TSI's argument that it was entitled to payment over and above the retainer, and concluded that the amount remaining unpaid was $72,926.06. This is the final judgment on appeal.

II. The Appeal
On appeal, the Estate raises eight issues. Without discussing each of these issues, this court concludes that none of them warrants relief from this court. Before the Estate's brief presented these eight issues, it improperly presented a separate argument in the statement of the case and the facts. That argument maintained that an oral contract did not exist between the Estate and TSI, but rather it existed between Kennan Dandar or Dandar & Dandar and TSI.
There is considerable merit to this argument. Throughout his testimony, Dr. Garko talked of working for the law firm. The agreement is oral, but the record does not contain evidence of discussions between Dr. Garko and Kennan Dandar about Dr. Garko being retained by the Estate or that Kennan Dandar was negotiating with Dr. Garko as an agent of the Estate. Despite the sizable commitment associated with this oral contract, Dandar & Dandar never appears to have consulted with the personal representatives of the Estate about this decision, and the law firm did not seek any approval from the probate court to retain TSI.
Despite the potential merit of this issue, the trial court was correct in its order when it stated that there was "no dispute" about the oral contract being one between the Estate and TSI. Dandar & Dandar, in its capacity as attorneys for the Estate, never pleaded that the oral contract was a contract only between the law firm and TSI. The conflict that has existed at all times between the Estate and its lawyers in this adversary proceeding is palpable, but we cannot conclude that the conflict creates fundamental error as to the judgment in favor of TSI.

III. The Typical Approach to Such an Issue
If the financial dispute between TSI and Dandar & Dandar had not arisen and the case against the Church of Scientology had reached a settlement under more typical circumstances, then presumably the amount and the appropriateness of TSI's fees would have been resolved as a dispute under Rule 4-1.5 of the Rules of Professional Conduct. In such a dispute, the Estate could have made many arguments that have not been made in this case. The most obvious argument available for the Estate would be that the "trial consultant" services were little or nothing more than the type of work that Dandar & Dandar had agreed to perform on a contingency *5 and that the services of TSI merely shifted work the law firm should have performed under its contingency agreement into "costs" over and above those fees. This is an argument that would involve not merely the $72,926.06 judgment, but the entire $232,926.06 paid to TSI.
Obviously, a dispute under Rule 4-1.5 arises between the client and the attorney. It is not a matter involving a third party who provided the disputed services. In this case, TSI established to the satisfaction of the trial court that it had performed services under its oral contract for which it was due a final payment of $72,926.06. We have no legal basis to reverse that decision, but that decision does not prevent the Estate from seeking a proper remedy vis-à-vis its attorneys.
Affirmed.
WHATLEY, J., Concurs.
SILBERMAN, J., Concurs specially with opinion.
SILBERMAN, J., Concurring specially.
I concur in the decision to affirm the final judgment. The majority opinion highlights a number of difficulties presented by this case that the trial court resolved against the Estate, and I agree that the evidence supports the trial court's conclusions.
The majority opinion questions the role that Dr. Garko was to play, and did play, in litigating the dispute between the Estate and the Church of Scientology; the nature and quality of the services that Dr. Garko provided; and the Estate's liability to Dr. Garko. To the extent that the trial court resolved these issues, the Estate has not shown a basis for reversal.
The majority opinion also expresses concern as to Dandar & Dandar's representation of the Estate; the existence of actual or potential conflict between Dandar & Dandar and the Estate; whether Dandar & Dandar adequately consulted with the Estate about certain decisions; and the availability of a remedy for the Estate to perhaps seek recovery against Dandar & Dandar. Although these concerns are understandable in light of the record that is before us, the record does not provide sufficient information to address those concerns, particularly as to the discussions and understandings that existed between Dandar & Dandar and the Estate. Thus, I cannot join the majority opinion to the extent that it draws conclusions regarding Dandar & Dandar's conduct and the merits of any claims that the Estate may seek to pursue.